OPINION OF THE COURT
Bernard M. Bloom, S.
This proceeding for settlement of a final trust accounting presents a question of construction occasioned by the bankruptcy of a charitable remainderman designated by the donee of a power of appointment.
The donor of the power, Adolph G. Kraetzer, died March 3, 1931 leaving a 1927 will which was probated in this court. His will provided that the net estate be divided into three portions and placed in trust, each part to furnish income to one of his three children. Upon the death of each child, the remainder interest in his or her trust was to be distributed “by valid and absolute disposition by will of such child” and in default of such exercise of the power, “as a part of the estate of such child in accordance with the statutes of descent and distribution of the State of New York.”
*437 One of the children thus benefited was Dr. Arthur F. Kraetzer. His will, which was duly admitted to probate in New York County following his death on March 2, 1940, directed that the trust fund established for him under his father’s will be placed in further trust to pay income to his wife, Beatrice MacDonald Kraetzer, and that upon her death, the corpus be equally divided between his niece, Caroline C. Vance, “to her own sole use, benefit or behoof, forever” and Knickerbocker Hospital, or its successor or successors, “to its sole use, benefit and behoof, absolutely and forever.”
Beatrice MacDonald Kraetzer died on April 10, 1976, at which time the charitable remainderman, by then known by the name Arthur C. Logan Memorial Hospital, was an operating hospital. Shortly thereafter, in October of the same year, Logan Memorial filed a voluntary petition under chapter 11 of the Bankruptcy Law (US Code, tit 11). The corporation was adjudicated a bankrupt on February 15, 1979, at which time it ceased its usual operations.
Ursula MacDonald, executrix of the estate of Beatrice MacDonald Kraetzer, contends that the remainder gift to the hospital lapsed under these circumstances and is properly payable to her testate as sole distributee in intestacy in accordance with the asserted testamentary intent both of Adolph G. Kraetzer and of Dr. Arthur F. Kraetzer. The Attorney-General of the State of New York, appearing in his capacity as statutory representative of charitable interests, agrees that the gift failed but argues for an application of the cy pres power to preserve the gift for a similar eleemosynary purpose. Lawrence Sarf, who serves as trustee in bankruptcy for the hospital, maintains that as Logan Memorial was a functioning voluntary hospital upon the termination of the preceding life income interest, the gift vested absolutely in it and is not subject to divestiture merely because the trustee failed to make immediate payment.
The intended remainderman, Knickerbocker Hospital, renamed Arthur C. Logan Memorial Hospital, though adjudicated a bankrupt, remains extant. However, the bare legal existence of a charitable corporation to which a testamentary disposition is made does not ensure entitle *438 ment to receipt of the gift in its favor; on the contrary, the cessation of its benevolent functions, whether or not accompanied by bankruptcy, has invariably been held to defeat its claim to the disposition notwithstanding continued corporate existence whether the winding down occurred before the death of the testator, in the case of an immediate outright gift (see, e.g., Matter of Walter, 150 Misc 512; Matter of Mills, 121 Misc 147), during an antecedent life income interest, in the case of a gift of the remainder (see Matter of Scott, 1 Misc 2d 206; Matter of Shelton, 87 NYS2d 853; Matter of Brundrett, 87 NYS2d 851; Matter of McNeile, NYLJ, Jan. 5, 1981, p 11, col 5; Matter of Lauterbach, NYLJ, July 11, 1980, p 7, col 3) or during the actual enjoyment of a gift of income in perpetuity (Matter of Bowne, 11 Misc 2d 597).
The trustee in bankruptcy seeks to distinguish this body of law on the ground that the institution herein was still performing its customary patient services at the time the gift became payable upon the death of the life income beneficiary. Had the testamentary trustee made prompt distribution, no question would have arisen as to the hospital’s qualification to receive the funds. Accordingly, he argues, the dilatoriness of the fiduciary should not be permitted to have the effect of causing the hospital’s indefeasibly vested gift to be diverted to another recipient.
This line of reasoning is wide of the mark. As a noncontingent gift the enjoyment of which was merely postponed to let in an intervening life income interest, the gift to Knickerbocker Hospital actually vested before it became payable — upon the death of Dr. Arthur Kraetzer, the donee of the power (Matter of Ablett, 3 NY2d 261; Matter of Leventhal, 27 Misc 2d 594; Matter of Bowne, supra; Matter of Tapper, 139 NYS2d 110). But that fact has no relevance to whether payment should now be directed to be made to the trustee in bankruptcy; as is evident from the line of authority mentioned above, termination of its benevolent services causes the loss of a charity’s right to receive an absolute disposition or continued income, as the case may be, despite the prior vesting of the bequest or devise. Charitable gifts by will, being for public purposes, are impressed with a public trust imposed by the charter of *439 each particular entity even if no express trust was created by the donor (Sherman v Richmond Hose Co., 230 NY 462; Matter of Scott, 1 Misc 2d 206, supra). Thus it is, for example, that upon the dissolution of a charitable membership corporation which holds a testamentary fund to furnish income to itself in perpetuity, the fund may be ordered paid under the cy pres power to another entity furthering similar benevolent purposes rather than distributed among the membership. (Sherman v Richmond Hose Co., supra; see, also, Matter of Wagner, 112 Misc 2d 302.)
The trustee in bankruptcy argues that even now the hospital is capable of using the bequest in accordance with the wishes of Dr. Kraetzer in that its obligations to its creditors were incurred in conjunction with its active operation as a voluntary hospital, particularly since patient care continued to be provided for nearly three years following the death of Dr. Kraetzer’s widow. As the gift was not limited to any specific purpose, but rather given in absolute terms, he maintains, payment of the hospital’s debts is a proper charitable object.
The same argument was, or could have been, advanced in virtually every other instance in which a particular charity was in bankruptcy at the time the gift would otherwise have been paid. Whatever its inherent merits, the courts have uniformly held that the intention of a testator in making a general gift to a charitable corporation was the furtherance of the charitable purpose for which the entity was formed as set forth in its charter. In the case of hospital corporations, such purpose is deemed to be the actual a^d continued provision of acute patient care services rather than the satisfaction of creditors’ claims (see Matter of Lauterbach, NYLJ, July 11, 1980, p 7, col 3, supra; Matter of McNeile, NYLJ, Jan. 5, 1981, p 11, col 5, supra; Matter of Walter, 150 Misc 512, supra; Matter of Ruttenau, 149 Misc 626; see, also, Matter of Cohen, 58 NYS2d 924). .
Nor does the wording of the gift to Knickerbocker Hospital — “to its sole use, benefit and behoof, absolutely and forever” compel a conclusion at variance with that presumed intent. Given the use of almost those precise words T elaboration following the gift of the remaining half of *440 the remainder to the donee’s niece, it would seem that they constitute a mere draftsman’s mannerism rather than a broad grant of authority to Knickerbocker Hospital to use the fund for a purpose other than the continued operation of its facilities for the care of ill and injured persons. Thus, the court concludes that the gift was for the objects of the corporation and not to the corporation itself. (See Matter of Scott, supra, at p 210; Matter of Mills, 121 Misc 147, 150, supra.) While the delay in payment over of the hospital’s intended half share of the trust corpus is unfortunate, the court cannot ignore the greatly changed circumstances which presently exist.
It remains to be determined whether the gift in question is subject to the cy pres power or passes to the estate of the donee’s widow by intestacy.
The cy pres power as it existed in 1940, when the donee died, though more narrowly circumscribed than it is today, was applicable to permit designation of an alternate recipient if the gift to the intended beneficiary had theretofore vested (see, generally, Matter of Dunn, NYLJ, March 15, 1983, p 14, col 2) as had the instant one. Then, as now, cy pres may be invoked when it is determined that the testator’s primary purpose was a general charitable one rather than an intent to benefit the particular organization named and none other. Once a gift has vested, courts are loathe to fail to find the broader intent; in fact, absent an express divesting condition, cy pres is almost invariably applied. (Matter of Goehringer, 69 Misc 2d 145.) Testamentary provisions which could be interpreted as providing for forfeitures after vesting are disfavored and the intention to create them must appear clearly. (Sherman v Richmond Hose Co., 230 NY 462, supra; Matter of Goehringer, supra.) While a specific gift over in the event of failure of the gift (in contradistinction to a general gift over) prevents use of the cy pres power when there had been an original failure, that is, a failure before vesting, it will not be deemed a bar to cy pres where the charitable entity subsequently becomes ineligible to receive the gift unless unequivocally applicable to that event. (Matter of Goehringer, supra, p 150.) In short “ ‘where a testator has apparently sought to leave money for a charitable purpose, a liberal construe *441 tion is to be given to the terms of the will in order to uphold it and validate the bequest.’ ” (Matter of Nurse, 35 NY2d 381, 388; Matter of Potter, 307 NY 504, 517.)
Here there is no express divesting condition and no gift over of any description. Though Knickerbocker Hospital was the only intended recipient of a charitable disposition, there was no language in the will indicative that testator’s charitable intent was so strictly limited to it that he would have preferred a partial intestacy to the exercise of cy pres on behalf of a similar institution.
The executrix of the estate of Dr. Kraetzer’s widow argues that the cy pres doctrine has no proper application here because the will of Adolph G. Kraetzer, the donor of the power, provided that the trust remainder was to be distributed as part of his son’s estate as if he had died intestate in the event of his default to make a “valid and absolute” disposition of the funds. The court, however, adjudges that the exercise of the power by the donee was both valid and absolute and that the gift over to the donee’s. intestate distributees in default of its exercise has not been activated. Once a legacy vests upon the death of the testator, there is no lapse on the basis of what follows later. (Matter of Bowne, 11 Misc 2d 597, 599, supra; Matter of Clark, 1 Misc 2d 869.)
Accordingly, the court holds that the remainder gift intended for Knickerbocker Hospital under article fourth of the will of Arthur F. Kraetzer, deceased, pursuant to a power of appointment granted him under the will of Adolph G. Kraetzer, deceased, is a valid bequest which has not lapsed but which should be applied under the cy pres power to a similar charitable use by reason of the cessation of the intended beneficiary’s charitable operations.